Chad Conelly, SBN 022394
**MOLEVER CONELLY PLLC**
Indian Bend Corporate Centre
8161 E. Indian Bend Road, Suite 103
Scottsdale, Arizona 85250
Telephone: 480-268-2658
cc@arizonalegal.com
Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Drake Dixon,<br><br>                    Plaintiff,<br><br>v.<br><br>The Vanguard Group, Inc.,<br><br>                    Defendant. | Case No.:<br><br><br>**COMPLAINT** |

Plaintiff alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff Drake Dixon is seeking judgment, relief and damages brought under the Americans with Disabilities Act, Title VII, and the Family Medical Leave Act based on the unlawful conduct of his former employer, The Vanguard Group, Inc.

2.      Vanguard subjected Mr. Dixon to discrimination, a hostile work environment, and retaliation by, among other actions, giving him negative performance evaluations, belittling and demeaning him, and terminating his employment.

3.      Vanguard also unlawfully failed to engage in the interactive process and failed to accommodate Mr. Dixon's disabilities.

**MOLEVER CONELLY PLLC**
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

## PARTIES, VENUE, AND JURISDICTION

4.     Drake Dixon is, and at all relevant times was, a resident of Maricopa County, Arizona.

5.     Defendant The Vanguard Group, Inc. (hereinafter referred to as "Vanguard") is a Pennsylvania-based company that does business in Maricopa County, Arizona.

6.     The events at issue in this case occurred in Maricopa County, Arizona.

7.     This Court has subject matter jurisdiction over this dispute.

8.     This Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 12101 et seq. (the Americans with Disabilities Act); 42 U.S.C.A. § 2000e-5 (Title VII); 28 U.S.C. § 2601, et seq. (FMLA); and 28 U.S.C. § 1331 (federal question).

9.     This Court has personal jurisdiction over the parties.

10.     Venue in this Court is proper.

## GENERAL ALLEGATIONS

11.     Mr. Dixon started working at Vanguard in Scottsdale, Arizona in October 2015.

12.     Mr. Dixon's first position at Vanguard was Resolution Services Specialist.

13.     Initially, Mr. Dixon worked as a temporary employee through a third party.

14.     About eight months later, Vanguard hired Mr. Dixon directly as an employee.

15.     Vanguard gave Mr. Dixon performance evaluations while employed there.

16.     From the time Mr. Dixon started working at Vanguard until he was assigned a new manager in around August 2017, his performance evaluations were excellent.

17.     In or around July 2017, Mr. Dixon was promoted to the position of Client Experience Specialist.

18.     Mr. Dixon started his new position in August 2017.

19.     With his promotion and move to a different department, Mr. Dixon's manager changed.

20.     Mr. Dixon is a homosexual man.

21.     Mr. Dixon was open at work about his sexual orientation.

22.     Mr. Dixon's new manager knew that Mr. Dixon is a homosexual man.

23.     Mr. Dixon's new manager ridiculed Mr. Dixon's work for no good reason.

24.     Mr. Dixon's new manager treated him differently than his co-workers.

25.     Mr. Dixon's new manager refused to have regular one-on-one meetings with him as he did with others.

26.     Mr. Dixon's new manager belittled him including in private and in front of co-workers.

27.     Mr. Dixon's new manager interfered with his attempts to speak with others about his future career options at Vanguard.

28.     Mr. Dixon's new manager exhibited a bullying attitude towards him.

29.     Around March or April 2018, during a meeting with his manager and another Vanguard employee, Mr. Dixon's manager brought up Mr. Dixon's use of PTO and said that he'd be rating Mr. Dixon lower than fully successful on his performance evaluation because Mr. Dixon had used so much PTO.

30.     In response, Mr. Dixon told his manager he had used his PTO because he was sick – Mr. Dixon told his manager that, because of some decisions he made in his past, he was sick, it did not seem to be getting better, and he had to use his PTO to deal with his health problems.

31.     On or about April 23, 2018, Mr. Dixon's manager gave him a negative performance evaluation.

32.     Despite his manager's harassing and discriminatory conduct, Mr. Dixon continued to excel at his job, and he was recognized often by others at Vanguard for his excellent work.

**MOLEVER CONELLY** PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

33.     Around May and June 2018, Mr. Dixon's health problems worsened, and he was in significant pain.

34.     Mr. Dixon told his manager he was sick and in significant pain, that he was taking large amounts of ibuprofen each day for the pain, and he described generally the source of the pain.

35.     Mr. Dixon was hospitalized around end of June 2018 for his health problems.

36.     Mr. Dixon submitted for leave under the Family Medical Leave Act around the same time to deal with his health problems.

37.     Mr. Dixon was granted continuous FMLA leave.

38.     While on FMLA leave, Mr. Dixon underwent multiple surgeries.

39.     After his surgeries, Mr. Dixon could not sit down.

40.     Once he went back to work, he could only sit for short periods of time.

41.     Mr. Dixon's doctor recommended that he use a stand-up desk upon returning to work.

42.     Mr. Dixon returned to work with intermittent FMLA leave, which he was told he could use for his ongoing health problems.

43.     Upon his return to work after his continuous FMLA leave in or around August 2018, Mr. Dixon asked for a stand-up desk as his doctor suggested.

44.     Mr. Dixon gave his manager a doctor's note about his need for a stand-up desk.

45.     Vanguard never spoke with Mr. Dixon about his request for a stand-up desk.

46.     Vanguard never spoke with Mr. Dixon about his physical limitations that resulted in him needing a stand-up desk.

47.     Vanguard never spoke with Mr. Dixon about any possible accommodations related to his request for a stand-up desk or his related health problems.

4

48.    Vanguard never provided Mr. Dixon a stand-up desk or any other accommodation to address his related health problems.

49.    In September 2018, Mr. Dixon's manager told him he would be giving Mr. Dixon a further development needed ("FDN") rating on his year-end evaluation.

50.    In response, Mr. Dixon asked how he could get a FDN ranking when he had high numbers and had addressed the items his manger had put down in his mid-year evaluation.

51.    In response, Mr. Dixon's manager said it was because Mr. Dixon had been out of the office for an entire month on FMLA leave, and said he could not rate Mr. Dixon any higher when he was not at work for a month and out on leave and that Mr. Dixon being out on leave directly affected his evaluation.

52.    During the same meeting, Mr. Dixon asked his manager if he did not like Mr. Dixon because he is gay, and in response, his manager just stared at him and said nothing.

53.    During the same meeting, Mr. Dixon also discussed his bad eyesight with his manager – he told his manager he had to be close to the screen to read, and he suggested a different screen could help.

54.    After the meeting with his manager, Mr. Dixon reported his manager's improper comments to another manager.

55.    Mr. Dixon received an email from human resources for a meeting to occur on September 28, 2018.

56.    Mr. Dixon met with a woman in human resources on or about September 28, 2018.

57.    During the meeting, Mr. Dixon explained, among other things, that he had asked his manager if he did not like him because he is gay, and his manager did not respond; that his manager said Mr. Dixon would be getting a negative performance evaluation because he went out on FMLA leave; and that his manager said he could not give Mr. Dixon a good rating when he takes leave and is out of the office.

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

58.    During the same meeting, they also discussed Mr. Dixon's bad eyesight which made it difficult for him to read on his computer screens.

59.    The human resources representative told Mr. Dixon he should talk with a person in administration about ordering new screens.

60.    On the other issues, the human resources representative told Mr. Dixon she would speak with Mr. Dixon's manager and get back to Mr. Dixon in about two weeks.

61.    Mr. Dixon made the request for the new computer screens to the administration person, who said she would speak with Mr. Dixon's manager about it to acquire them.

62.    Vanguard never provided him the new screens at his workstation or any other accommodation to address his eyesight problems.

63.    After Mr. Dixon reported his manager's discrimination and harassment to human resources, Mr. Dixon's manager continued discriminating against him and retaliating against him by, among other actions, ridiculing him work for no good reason, cancelling his regular one-on-one meetings, and speaking negatively about Mr. Dixon to co-workers.

64.    As of October 2018, Mr. Dixon was sometimes using his allotted FMLA leave (intermittent leave) when his health problems worsened.

65.    In October 2018, Mr. Dixon used some of his FMLA time to deal with his ongoing health problems.

66.    The discriminatory, harassing, and retaliatory conduct of Mr. Dixon's manager continued.

67.    On or about October 18, 2018, Mr. Dixon called Vanguard's crew assistance program to ask about seeing someone about workplace conflicts because his manager's conduct was disrupting his work and causing him anxiety.

68.    On or about October 24, 2018, Mr. Dixon spoke with the Vanguard human resources representative to whom he had reported his manager's improper

conduct.

69.    She told Mr. Dixon she was opening an investigation on Mr. Dixon, despite that he had gone to her with complaints against his manager.

70.    The human resources representative asked Mr. Dixon about several issues, including that Mr. Dixon had asked a female co-worker for a pad.

71.    Mr. Dixon explained that he had done so because his wound from one of his surgeries was bleeding through his pants and he had asked a female co-worker who he thought had a pad if he could have one because he needed something for his wound, and the female co-worker never expressed to him she thought his request was a problem.

72.    During the same discussion, the human resources representative asked Mr. Dixon about a smell coming from his body that she said a few people had mentioned.

73.    Mr. Dixon explained he had an infection before his surgeries, had been admitted to critical care because of it, that he had been in excruciating pain and unable to walk, and the smell was probably because of the infection but that he thought it was no longer an issue.

74.    In response, the human resources representative said the smell must be coming back, asked about Mr. Dixon's showering habits, and suggested that, besides his normal shower routine of taking several a day, he should also shower during work using the locker room showers in the gym during his lunch break.

75.    At the end of the meeting, Mr. Dixon asked the human resources representative if he needed to  look for another job, and she responded she needed to finish her investigation, and that termination was possible.

76.    Vanguard did nothing to stop the harassment, discrimination, and retaliation to which Mr. Dixon was being subjected.

77.    Mr. Dixon was called into a meeting with Vanguard human resources on or about November 13, 2018.

78.    During that meeting, Mr. Dixon 's manager terminated Mr. Dixon's employment for allegedly violating the professional code of conduct.

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

**MOLEVER CONELLY PLLC**
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

79.    Mr. Dixon asked Vanguard human resources to again review his complaints and reconsider his termination, and he asked to be reinstated.

80.    On or about December 23, 2018, Vanguard human resources informed Mr. Dixon that reinstatement was denied, and Vanguard affirmed his termination.

81.    Mr. Dixon filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

82.    On July 5, 2019, the EEOC issued a right to sue letter to Mr. Dixon and he brings this action within 90 days of that letter.

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

83.    Mr. Dixon realleges each allegation set forth in this Complaint and incorporates them here by reference.

84.    Mr. Dixon is a "qualified individual" with a disability as defined in the Americans with Disabilities Act (the "ADA").

85.    Vanguard is an "employer" and "covered entity" under the ADA.

86.    Mr. Dixon was a qualified individual able to perform the essential functions of the job.

87.    Mr. Dixon suffered adverse employment actions because of his disability.

## Discrimination

88.    Mr. Dixon realleges each allegation set forth in this Complaint and incorporates them here by reference.

89.    Vanguard discriminated against Mr. Dixon based on his disability in violation of the ADA by, among other actions, ridiculing his work, treating him differently than his co-workers, belittling and bullying him, and terminating his employment due to his disability or Vanguard's perception that Mr. Dixon was disabled and Mr. Dixon's record of disability.

90.    Mr. Dixon suffered adverse employment actions by way of Vanguard's discrimination against him because of his disability, including being terminated.

91.    Vanguard's discrimination against Mr. Dixon violates the ADA.

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

**Failure to Engage in the Interactive Process and**

**Failure to Provide a Reasonable Accommodation**

92.　Mr. Dixon realleges each allegation set forth in this Complaint and incorporates them here by reference.

93.　Mr. Dixon notified Vanguard of his health problems during his employment.

94.　Vanguard knew of Mr. Dixon's disability during his employment.

95.　Mr. Dixon notified Vanguard of his desire for accommodations to address his disabilities during his employment.

96.　Vanguard knew Mr. Dixon needed accommodations during his employment to address his disabilities.

97.　Because of Mr. Dixon's notifications and Vanguard's awareness of his disabilities, Vanguard had to participate in the interactive process to determine whether Mr. Dixon's disabilities could be accommodated.

98.　Reasonable accommodations were possible to address Mr. Dixon's disabilities, including but not limited to a stand-up desk and different computer monitors.

99.　Vanguard failed to engage in the interactive process in good faith.

100.　Vanguard failed to provide Mr. Dixon reasonable accommodations to address his disabilities.

101.　Mr. Dixon suffered adverse employment actions because of his disabilities.

102.　Vanguard's failure to engage in the interactive process and failure refusal to provide Mr. Dixon a reasonable accommodation, and subjecting him to adverse employment actions, violates the ADA.

**Hostile Work Environment**

103.　Mr. Dixon realleges each allegation set forth in this Complaint and incorporates them here by reference.

104.　Vanguard subjected Mr. Dixon to verbal and other harassment.

105.　Vanguard's verbal and other harassment of Mr. Dixon was based on his

1    disabilities.

2    106.    The harassment was sufficiently severe and pervasive to alter the conditions

3    of Mr. Dixon's employment and created an abusive working environment.

4    107.    Vanguard knew or should have known of the harassment and failed to take

5    prompt effective remedial action.

6    108.    Vanguard's conduct violates the ADA.

7    **Retaliation**

8    109.    Mr. Dixon realleges each allegation set forth in this Complaint and

9    incorporates them here by reference.

10    110.    Mr. Dixon took protected activity which included, among other actions,

11    making verbal requests for reasonable accommodations, and complaining about the

12    unlawful discrimination to which he was subjected.

13    111.    Because of Mr. Dixon's protected activity, Vanguard took negative

14    employment actions against him, which concluded in Vanguard's termination Mr.

15    Dixon's employment.

16    112.    Vanguard's conduct constitutes unlawful retaliation under the ADA.

17    **Damages under the ADA**

18    113.    Because of Vanguard's unlawful actions as stated in this Complaint, Mr.

19    Dixon has been damaged.

20    114.    Because of Vanguard's violations of the ADA as stated in this Complaint,

21    Mr. Dixon has suffered substantial losses, including loss of earnings.

22    115.    Because of Vanguard's violations of the ADA as stated in this Complaint,

23    Mr. Dixon has suffered impairment and damage to his good name and reputation.

24    116.    Because of Vanguard's violations of the ADA as stated in this Complaint,

25    Mr. Dixon suffered embarrassment, humiliation and anguish, and other incidental and

26    consequential damages and expenses.

27    117.    The discriminatory and retaliatory conduct of Vanguard was outrageous

28    and malicious, was intended to injure Mr. Dixon, and was done with reckless indifference

**MOLEVER CONELLY** PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

1    to Mr. Dixon's protected civil rights, entitling Mr. Dixon to an award of punitive

2    damages.

3        118.    Mr. Dixon is entitled to an award of his attorneys' fees and costs.

4    ## VIOLATION OF TITLE VII

5        119.    Mr. Dixon realleges each allegation set forth in this Complaint and

6    incorporates them here by reference.

7        120.    Under Title VII, Mr. Dixon was entitled to a workplace free of harassment

8    and discrimination based on his sex and his sexual orientation.

9        121.    Under Title VII, Mr. Dixon was entitled to a workplace free of gender

10    stereotyping.

11        122.    Under Title VII, Mr. Dixon was protected from retaliation for having

12    complained of discrimination.

13        123.    Mr. Dixon was qualified for his positions at Vanguard.

14        124.    Vanguard is an employer covered under Title VII.

15        125.    Mr. Dixon is a member of a protected class based upon his sex/sexual

16    preference.

17    ## Discrimination

18        126.    Mr. Dixon realleges each allegation set forth in this Complaint and

19    incorporates them here by reference.

20        127.    Mr. Dixon was subjected to numerous adverse employment actions by

21    Vanguard based on his sex/sexual preference, which concluded in his termination.

22        128.    Vanguard treated Mr. Dixon differently than similarly situated employees

23    outside his protected class.

24        129.    Mr. Dixon was subject to discrimination based on his sex/sexual

25    preference/gender stereotyping.

26        130.    Vanguard ignored this discrimination and failed to adequately investigate

27    Mr. Dixon's complaints.

28        131.    Vanguard's conduct constitutes unlawful discrimination under Title VII.

**MOLEVER CONELLY** PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

1

**Hostile Work Environment**

2    132.    Mr. Dixon realleges each allegation set forth in this Complaint and

3  incorporates them here by reference.

4    133.    Vanguard subjected Mr. Dixon to verbal and other harassment.

5    134.    Vanguard's verbal and other harassment of Mr. Dixon was based on his

6  sex/sexual preference/gender stereotyping.

7    135.    The harassment was sufficiently severe and pervasive to alter the conditions

8  of Mr. Dixon's employment and created an abusive working environment.

9    136.    Vanguard knew or should have known of the harassment and failed to take

10  prompt, effective remedial action.

11    137.    Vanguard's conduct violates Title VII.

12

**Retaliation**

13    138.    Mr. Dixon realleges each allegation set forth in this Complaint and

14  incorporates them here by reference.

15    139.    Mr. Dixon took protected activity which included, among other actions,

16  complaining about the unlawful discrimination to which he was subjected.

17    140.    Because of Mr. Dixon's protected activity, Vanguard took negative

18  employment actions against him, which concluded in Vanguard's termination Mr.

19  Dixon's employment.

20    141.    Vanguard's conduct constitutes unlawful retaliation under Title VII.

21

**Damages under Title VII**

22    142.    Because of Vanguard's unlawful actions as stated in this Complaint, Mr.

23  Dixon has been damaged.

24    143.    Because of Vanguard's violations of Title VII as stated in this Complaint,

25  Mr. Dixon has suffered substantial losses, including loss of earnings.

26

27    144.    Because of Vanguard's violations of Title VII as stated in this Complaint,

28  Mr. Dixon has suffered impairment and damage to his good name and reputation.

12

**MOLEVER CONELLY** PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

145.     Because of Vanguard's violations of Title VII as stated in this Complaint, Mr. Dixon suffered embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

146.     The discriminatory and retaliatory conduct of Vanguard was outrageous and malicious, was intended to injure Mr. Dixon, and was done with reckless indifference to Mr. Dixon's protected civil rights, entitling Mr. Dixon to an award of punitive damages.

147.     Mr. Dixon is entitled to an award of his attorneys' fees and costs.

## VIOLATION OF THE FMLA

148.     Mr. Dixon realleges each allegation set forth in this Complaint and incorporates them here by reference.

149.     Vanguard employs over fifty employees and as such, is a covered employee under the Family Medical Leave Act ("FMLA").

150.     Mr. Dixon was an eligible employee covered under the FMLA.

151.     While employed with Vanguard, Mr. Dixon applied for and was granted leave under the FMLA in 2018.

152.     Mr. Dixon initially took continuous leave under the FMLA.

153.     Upon his return to work at Vanguard after his continuous FMLA leave, Mr. Dixon had intermittent FMLA leave, which he could use for his medical condition.

154.     Mr. Dixon's manager knew Mr. Dixon had intermittent FMLA leave available.

155.     Mr. Dixon's manager attempted to interfere with Mr. Dixon's right to use his FMLA leave by, among other actions, informing him he was giving Mr. Dixon a negative performance evaluation for being out on leave and giving Mr. Dixon negative performance evaluations.

156.     When Mr. Dixon exercised his right to use his intermittent FMLA leave, his manager discriminated and retaliated against him for using allotted leave.

157.     Mr. Dixon complained to Vanguard human resources that his manager was

MOLEVER CONELLY PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

**MOLEVER CONELLY** PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250

1    interfering with and discriminating against him for going out on FMLA leave.

2        158.    Mr. Dixon's manager subjected Mr. Dixon to a hostile work environment

3    because Mr. Dixon took FMLA leave and exercised his rights under the FMLA.

4        159.    Ultimately, Vanguard terminated Mr. Dixon's employment.

5        160.    Vanguard's interference with Mr. Dixon's rights under the FMLA and

6    discrimination against him for using FMLA leave, attempts to dissuade him from using

7    his FMLA leave, and retaliation for reporting the discrimination and interference by his

8    manager violate the FMLA.

9                        **Damages under the FMLA**

10       161.    Because of Vanguard's unlawful actions as stated in this Complaint, Mr.

11   Dixon has been damaged.

12       162.    Because of Vanguard's violations of the FMLA as stated in this Complaint,

13   Mr. Dixon has suffered substantial losses, including loss of earnings.

14       163.    Mr. Dixon is entitled to liquidated damages under the FMLA.

15       164.    Mr. Dixon is entitled to an award of his attorneys' fees and costs.

16                            **JURY DEMAND**

17       165.    Mr. Dixon requests trial by jury.

18       WHEREFORE, Mr. Dixon requests that the Court enter a judgment in his favor

19   against Vanguard:

20       A.    For an award of Mr. Dixon's damages for loss of wages, benefits, and

21   promotional opportunities, including an award of back pay and front pay for all lost

22   salary and benefits.

23       B.    For an award of damages to compensate Mr. Dixon for mental anguish,

24   humiliation, embarrassment, and emotional injury.

25       C.    For liquidated damages under the FMLA.

26       D.    For all other damages permissible under the ADA, Title VII, and the

27   FMLA.

28       E.    For an order enjoining Vanguard from engaging in the unlawful

14

employment practices to which it subjected Mr. Dixon, and other remedial action as may

be appropriate, which may include, but is not limited to, reinstatement of Mr. Dixon with

back pay, and any other equitable relief as the court deems appropriate.

F.    For an award of punitive damages.

G.    For an award of reasonable attorneys' fees and the costs of this action.

H.    For pre-judgment and post-judgment interest on all amounts awarded.

I.    For any other and further relief as this Court may deem just and proper.

DATED: October 1, 2019.

**MOLEVER CONELLY PLLC**

By: _s/ Chad Conelly / 022394_
Chad Conelly
Attorneys for Plaintiff

**MOLEVER CONELLY** PLLC
Indian Bend Corporate Centre
8161 E. Indian Bend Road | Suite 103
Scottsdale, Arizona 85250